STRAUB, Circuit Judge,
concurring:
I agree fully with the Court’s opinion. I write separately to emphasize that I do not believe either Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), or Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam), raises any doubt as to our well-established precedent that federal courts lack subject matter jurisdiction over IDEA claims that are unexhausted and that do not meet one of the limited exceptions to the statute’s exhaustion requirement.
As the Court notes, supra at 203, we have long treated the IDEA’S exhaustion requirement as jurisdictional. See, e.g., Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir.2002); Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir.2002); Taylor v. Vermont Dep’t of Educ., 313 F.3d 768, 789 (2d Cir.2002); W.G. v. Senatore, 18 F.3d 60, 64-65 (2d Cir.1994). The vast majority of other circuits to have considered the issue have done so as well. See, e.g., Ellenberg v. New Mexico Military Inst., 478 F.3d 1262, 1279 (10th Cir.2007); Fliess v. Washoe County Sch. Dist., 90 Fed.Appx. 240, 242 (9th Cir.2004) (unpublished decision); Ba-bicz v. Sch. Bd. of Broward County, 135 F.3d 1420, 1421 (11th Cir.1998) (per curiam); Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1095 (1st Cir.1989); but see Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527 (7th Cir.2006). This is for good reason: as explained more fully below, the IDEA, with few exceptions, does not provide prospective plaintiffs with a federal cause of action until the state review process has been completed. See 20 U.S.C. §§ 1415(i)(1) & (i)(2).
Neither Kontrick nor Eberhart calls this considerable body of case law into question. In Kontrick, the Supreme Court held that in bankruptcy proceedings, the 60-day time limit pursuant to Bankruptcy Rule 4004(a) for a creditor to file a complaint objecting to the debtor’s discharge is not jurisdictional, but rather is a judicially-created “claim-processing rule” that is subject to waiver and forfeiture. See 540 U.S. at 454-56, 124 S.Ct. 906. The Court reasoned that under the bankruptcy laws, Congress provided that “objections to discharges” are “[c]ore proceedings” that are clearly within the jurisdiction of the federal courts, and that no statute curtails that jurisdiction by specifying a time limit for filing a complaint objecting to discharge. Id. at 453-54, 124 S.Ct. 906 (quoting 28 U.S.C. § 157(b)(2)(J)). Thus, Rule 4004(a)’s 60-day time limit does not affect “the classes of cases ... falling within a court’s adjudicatory authority,” i.e., subject matter jurisdiction. Id. at 455, 124 S.Ct. 906.
In Eberhart, the Supreme Court followed Kontrick in holding that the seven-day time limit for a defendant to file a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 was not jurisdictional. See 546 U.S. at 13, 126 S.Ct. 403. The Court explained that Rule 33, like Bankruptcy Rule 4004(a), is nothing more than an “ ‘emphatic time pre *208 scription[ ] in [a] rule[ ] of court’ ” that regulates motion practice in an action — a federal criminal prosecution — that district courts already possess subject matter jurisdiction to adjudicate. Id. at 18, 126 S.Ct. 403 (quoting Kontrick, 540 U.S. at 454, 124 S.Ct. 906). In reaching its conclusion, the Court stressed that “ ‘[cjlarity would be facilitated’... ‘if courts and litigants used the label “jurisdictional” not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court’s adjudicatory authority.’ ” Id. at 16, 126 S.Ct. 403 (quoting Kontrick, 540 U.S. at 455, 124 S.Ct. 906).
Kontrick and Eberharb thus counsel that where Congress has provided courts with jurisdiction over the claim at issue, judicial rules cannot be relied upon to abdicate 'that jurisdiction. See Kontrick, 540 U.S. at 452-53, 124 S.Ct. 906 (“Only Congress may determine a lower federal court’s subject-matter jurisdiction.... ‘[I]t is axiomatic’ that [judicially-created] rules ‘do not create or withdraw federal jurisdiction.’ ”) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)). In both cases, Congress had clearly provided jurisdiction over the underlying actions — an objection to discharge and a federal criminal prosecution — and the time limitations that affected the processing of those actions were not dictated by statute in a way that could affect the existence of the underlying claims, but rather were a product of judicial rulemaking. This, then, is the critical distinction between a claim-processing rule and a jurisdictional bar: a claim-processing rule does not affect the existence of the underlying claim. See also Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 445 (2d Cir.2006) (noting that an exhaustion requirement is not jurisdictional “unless the failure to exhaust administrative remedies is essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy”) (internal citations and quotation marks omitted).
We have applied this principle in the exhaustion context in several recent cases. In Richardson v. Goord, 347 F.3d 431 (2d Cir.2003) (per curiam), we held that the exhaustion requirement in the Prison Litigation Reform Act (“PLRA”) is a claim-processing rule because the requirement affects a prisoner’s preexisting claims— brought under different statutes such as 42 U.S.C. § 1983—and thus exhaustion is not “essential to the existence of the claim.” Id. at 434. Similarly, in Paese v. Hartford Life & Accident Insurance Co., we found that the failure to exhaust administrative remedies under the Employee Retirement Income Security Act (“ERISA”) does not deprive courts of subject matter jurisdiction (despite language in prior cases in this Circuit suggesting otherwise) because, inter alia, ERISA “contains no statutory exhaustion requirement”; rather, the requirement “is purely a judge-made concept” that “ha[s] little or no bearing on the existence of a claim.” 449 F.3d at 443, 445. In Zhong v. United States Department of Justice, 480 F.3d 104, 107 (2d Cir.2006), we noted that the converse was true for exhaustion of administrative remedies in the immigration context. We explained that the immigration laws specify that courts of appeal may review only a “final order of removal,” 8 U.S.C. § 1252(d), which is a “clearly jurisdictional requirement” requiring that asylum cases be “brought to the Executive Office for Immigration Review (i.e., an IJ and the BIA) before they can be considered by courts of appeal.” Zhong, 480 F.3d at 107. We went on to hold that exhaustion of issues in the immigration context is not a jurisdictional requirement because issue exhaustion, unlike exhaustion of remedies, is merely a “court-imposed” rule not *209 expressly mandated by the immigration laws. Id. at 115-18.
Applied here, these principles leave no doubt that the IDEA’S exhaustion requirement is jurisdictional because it directly affects the existence of a plaintiffs underlying claim. The IDEA creates a series of procedural protections for disabled children as a means to ensure their “access to a free appropriate public education.” 20 U.S.C. § 1400(c)(3); see generally Heldman v. Sobol, 962 F.2d 148, 150-52 (2d Cir.1992). For disabled students such as Coleman who are removed from school for disciplinary reasons, these protections include, inter alia, a right to a manifestation hearing to determine whether the student’s conduct was caused by or directly related to his disability, 20 U.S.C. § 1415(k)(l)(E); a right to an expedited appeal of the manifestation decision before an impartial hearing officer, 20 U.S.C. §§ 1415(k)(3), (k)(4)(B) & (f)(1)(A); and a right to appeal that decision before a state review officer, 20 U.S.C. § 1415(g). But the IDEA does not permit students or their parents to sue the moment they are dissatisfied with the outcome of any of these proceedings. Rather, the IDEA grants prospective plaintiffs a federal (or state) cause of action only at the end of the administrative process: to parties who are “aggrieved” by the “final” decision of a state educational agency, or, if the agency does not provide an internal avenue of appeal, by the final decision of the impartial hearing officer. See 20 U.S.C. §§ 1415(i)(1) & (i)(2). Thus, by the explicit terms of the statute, a party like Coleman has the right to sue only after the state process has reached a final decision, just as an asylum seeker must first appeal an immigration judge’s adverse decision to the Board of Immigration Appeals before seeking relief in federal court. Courts, of course, do not possess jurisdiction over claims that Congress has specified do not yet exist. See, e.g., Bowles v. Russell, — U.S. —, 127 S.Ct. 2360, 2365, 168 L.Ed.2d 96 (2007) (“Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all,- it can also determine when, and under what conditions, federal courts can hear them.”).[1]
The Seventh Circuit — the only Court of Appeals to hold that the IDEA’S exhaus *210 tion requirement is not jurisdictional — reasoned that “lack of exhaustion usually is waivable, as lack of jurisdiction is not.” Mosely, 434 F.3d at 533 (internal citation and quotation marks omitted). For that proposition, the Seventh Circuit cites Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 991 (7th Cir.1996), which in turn cites Weinberger v. Salfi, 422 U.S. 749, 766-67, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Weinberger, however, supports the conclusion that the IDEA’S exhaustion requirement is jurisdictional. In that case, the Supreme Court held that because the Social Security Act (“SSA”) grants individuals a right to a “civil action” only upon the “final decision of the Commissioner of Social Security made after a hearing to which he was a party,” 42 U.S.C. § 405(g), the requirement that a “final decision” be reached “is a statutorily specified jurisdictional prerequisite.” Weinberger, 422 U.S. at 766, 95 S.Ct. 2457. Accordingly, the Court found that the district court lacked jurisdiction over the claims of the unnamed class members in the case, who had not filed applications with the Secretary and thus were not appealing from “any decision [of the Secretary], final or otherwise.” Id. at 764, 95 S.Ct. 2457. The named plaintiffs, however, had “fully presented their claims for benefits to their district Social Security Office and, upon denial, to the Regional Office for reconsideration,” and were raising purely constitutional claims that could benefit from no further exhaustion. Id. at 764-65, 95 S.Ct. 2457. The Supreme Court found that jurisdiction existed over these claims — even though the plaintiffs had not pursued all internal avenues of appeal — because (1) the term “final decision” in the SSA “is not only left undefined by the Act, but its meaning is left to the Secretary [of Health, Education, and Welfare] to flesh out by regulation”; and (2) the Secretary did not object to the named plaintiffs’ failure to fully exhaust all administrative avenues and in so doing determined “that for the purposes of this litigation the reconsideration determination is ‘final.’” Id. at 766-67, 95 S.Ct. 2457. Weinberger thus does not support the contention that exhaustion requirements are generally waivable; rather, because of the SSA’s “particular administrative scheme,” id. at 765, 95 S.Ct. 2457, complete exhaustion of social security claims is not required so long as a “final decision” by the Secretary has been reached. Id. at 767, 95 S.Ct. 2457.
In Mathews v. Eldridge, 424 U.S. 319, 328-30, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court expanded on Weinberger and clarified that “the [SSA’s] requirement that a claim for benefits shall have been presented to the Secretary ... is an essential and distinct precondition for ... jurisdiction,” whereas the “requirement that the administrative remedies prescribed by the Secretary be exhausted” is waivable, either by the Secretary, or in certain limited circumstances, by the courts. See also City of New York v. Heckler, 742 F.2d 729, 734 (2d Cir.1984) (noting that the SSA’s “final decision” requirement “consist[s] of two elements — (i) the ‘jurisdictional,’ non-waivable requirement that a claim for benefits has been presented to the Secretary and (ii) the ‘waivable’ requirement that the administrative remedies prescribed by the Secretary have been exhausted.”).
This distinction in SSA cases between “presentment” and “exhaustion” is inapplicable, and indeed would be incoherent, in the IDEA context. Unlike the SSA, which does not define the requisite “final decision” for jurisdictional purposes, see Weinberger, 422 U.S. at 766, 95 S.Ct. 2457, the IDEA explicitly delineates what is required before a plaintiff may bring a federal or state action: he or she must be “aggrieved by the findings and decision” of *211 the “State educational agency,” or, if the state does not provide for an appeal to that agency, a plaintiff can file suit to challenge the decision reached at the “[i]mpartial due process hearing.” 20 U.S.C. §§ 1415(i), (f), (g) & (k). These provisions are unambiguous and do not leave open the possibility that the “final decision” for jurisdictional purposes can mean anything other than that of the state educational agency or the impartial due process hearing officer. Moreover, the administrative process in social security cases occurs under a single umbrella, so it can fairly be said that an initial challenge to the termination of benefits has been “presented” to the Secretary, and a decision to uphold a termination of benefits can fairly be construed as a “final decision” for jurisdictional purposes. Under the IDEA, on the other hand, the state is ultimately responsible for adhering to the statute’s myriad requirements (in order to receive federal funding), but the first stages in the hearing process occur at the local level. Thus, presenting a claim, for example, to the superintendent of schools, or to the local official who conducts the manifestation hearing, is not the equivalent of presenting a claim to the state itself. As a result, permitting waiver of the IDEA’S exhaustion requirement would defeat one of its fundamental purposes: to give states the opportunity to correct the errors of their localities. See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 487 (2d Cir.2002).
The IDEA’S exhaustion requirement is unique in one respect: it allows for some limited exceptions, whereas most jurisdictional rules do not. See Bowles, 127 S.Ct. at 2366 (noting that courts “lack[ ] authority to create equitable exceptions to jurisdictional requirements”). Exhaustion of IDEA claims is not required “if (1) it would be futile to resort to the IDEA’S due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies.” Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir.2002) (citing Mrs. W. v. Tirozzi, 832 F.2d 748, 755 (2d Cir.1987)). Such exceptions are typically recognized only when exhaustion is a judicially-created claim-processing rule. See Zhong, 461 F.3d at 119 (“In contrast to statutory exhaustion, ... judicial exhaustion permits courts, in their discretion, to waive administrative exhaustion under certain circumstances.”) (internal citation and quotation marks omitted). However, the exceptions to the IDEA’S exhaustion requirement derive not from judicial doctrine, but from the statute’s unambiguous legislative history. See Heldman, 962 F.2d at 158-59 & n. 11 (explaining that the three recognized exceptions to exhaustion of IDEA claims— futility, a challenge to a policy of general applicability, and inadequacy of relief — derive directly from the legislative history of the Education for All Handicapped Children Act of 1975 and the Handicapped Children’s Protection Act of 1986, the precursors to the IDEA). Thus, these are not judicially-created exceptions that ordinarily would signify a claim-processing rule; rather, they are, effectively, statutory exceptions that courts must follow to carry out the clear intent of Congress. Accordingly, district courts possess jurisdiction over unexhausted claims only when one or more of these exceptions applies. Any other conclusion would violate the principle that “[o]nly Congress may determine a lower federal court’s subject matter jurisdiction.” Kontrick, 540 U.S. at 453, 124 S.Ct. 906.
I therefore agree with the Court that Coleman is not entitled to attorneys’ fees because he failed to exhaust his administrative remedies. Indeed, he filed his lawsuit even before his manifestation hearing. *212 I think it is also clear, however, that the District Court did not possess subject matter jurisdiction over Coleman’s claims and thus should have dismissed his lawsuit at the outset.

. The above analysis applies to exhaustion of remedies where a plaintiff’s claim is brought directly under the IDEA. The IDEA contains a separate provision requiring plaintiffs who bring actions under other statutes — such as the Americans with Disabilities Act — but who are seeking the kinds of relief available under the IDEA, to also exhaust administrative remedies before bringing suit:
Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973[29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.
20 U.S.C. § 1415(0- This provision is much more akin to the exhaustion requirement of the PLRA, in that it requires exhaustion before bringing causes of action that exist independently; thus, exhaustion under this provision may indeed be a claim-processing rule and not jurisdictional. Cf. Richardson, 347 F.3d at 434 (noting that the PLRA “lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements”) (internal citation and quotation marks omitted); but see Hope v. Cortines, 69 F.3d 687, 688 (2d Cir.1995) (holding that section 1415(Z) of the IDEA is jurisdictional). This issue does not arise here because Coleman’s only federal claims are brought exclusively under the IDEA.